1547 michael walker v. donahoe mr brian you there yes your honor can you hear me i hear you loud and clear good to have you with us sir good to be with you thank you very much may it please the court uh obviously i'm john brian and i'm honored here to represent michael walker in this case from putnam county west virginia lawful firearm possession and use in west virginia cannot alone form the basis of reasonable suspicion to perform a stop in investigatory detention of a pedestrian period whether it's eight minutes long with name calling such as we had here or whether it's 18 minutes long with polite and respectful treatment the district court opined here that the open carry of an ar-15 in west virginia is a quote developing area of the law as courts face the expansion of open carry end quote but to the contrary the legality of open carry in west virginia is nothing new it's not on the table at all it cannot be disputed united states versus black was issued by this court seven years ago and the right to exercise the open carry of firearms has long been the law of west virginia in fact the right to keep and bear arms for self-defense hunting and recreational use in west virginia is expressly set forth in our west virginia constitution in article 3 section 22 in this case michael walker was stopped subjected to a detainment including a background check was called vulgar obscene and offensive names all without having committed or even being suspected of committing criminal activity at all he was just walking the fact that he had a legal to possess rifle safely and non-threateningly strapped over his shoulder without more cannot be reasonable suspicion to support an investigatory detention how do you factor in the age issue because the defendant seems to be relying on that as one of its components of its argument as with a couple of other arguments made by the defendant in this case the allegation that my client michael walker could have been or might have been under age really appeared nowhere in the objective facts in the record so west virginia code section 6178 prohibits minors under the age of 18 from carrying firearms now the district court wrote in its opinion that although walker was 24 at the time of the stop his youthful appearance and the fact that he was walking rather than driving provided a basis for a reasonable officer to suspect that he was a minor and my response to that is your honor that the video and we have a video in this case the video clearly shows that michael walker doesn't have a youthful appearance in fact he's it depends on how old you are doesn't it it it may add on um you know and you have a middle-aged police officer uh you know to somebody in their 20s this guy clearly wasn't a teenager but maybe just somebody in his 40s or 50s he could have been this this is no doubt an interesting defense that they came up with after the fact but it it must fail and here's why there's a couple reasons one is even if the court is going to go with a a quote youthful appearance well then the court is venturing into the territory of looking at a video and weighing the facts and performing the job of the jury if we're going to decide if this is going to hinge on whether mr walker had a youthful appearance then we have a genuine issue of material fact and summary judgment should not have been granted in favor of the defendant um so we win on that issue um in the in the procedure which we find ourselves in now now secondly i i don't think that it's even a jury issue because when you look at the defendant officer or deputy donahoe's testimony this was discussed during his deposition he was asked did you observe mr walker committing any crimes or anything illegal at that time at the time of the stop his answer was at the time i didn't know who he was other than just walking down the road no i don't know whether he can possess a gun or anything like that at that point and so i asked yes they have reasonable suspicion right yes your honor and that's the standard i'm sorry your honor the officers get a lot of deference in these situations mr brian yes you don't know that i would argue they get too much deference but this is but they give a lot of it under the law they get a lot of deference in gray areas we give them along we we defer to them well if i guess we need to define deference because that we're really now getting to the the danger that we're facing if if this is allowed to stand and that is yes officers this this place this thing was just up the road from the schoolhouse wasn't it your honor it was it was approximately a mile away from a school only and it only came up after the fact there was no mention at the time of a school having anything to do with this stop and i can but that's an objective fact the locations is the location that's true your honor the the the objective facts as demonstrated by the defendant's own testimony shows that the location has nothing to do with the school in fact if we're going to put a radius around any school or the amount of schools that we have in in this country so we would have a basically a no fourth amendment zone a radius of of decreased fourth amendment rights around every school and what does it make a difference though that the parkland shooting had just occurred and here you have a young person walking young male and and those are the people who who tend to shoot up schools young men walking with an ar-15 down a public highway why isn't that a factor that's a good good question judge keenan and here is the answer to that if and i would i would disagree with the fact that there is any objective fact in the record pertaining to anybody's suspicion that that any school that michael walker posed a threat to any school and i'll explain why other than if we look at google earth and measure the distance that he was walking eventually he would get to that school but it had there was no basis in the record the any party on the video which captured the entire incident between the parties but but setting that aside if if he's going to claim which he did which i would argue is an irrational fear or a speculation rather than any particular fact about my client but if he's going to claim that he was something a potential copycat of the parkland shooter we can look at and see whether there's any similarities okay nicholas cruz the the parkland shooter how was it how was this clown of yours dressed well you can see how he's dressed in the video i believe he had i'm asking you i'm asking you i don't have a video in front of me i'm asking you i want you to tell me how he's dressed he was heading coyote hunting i think i think he had maybe camouflage pants on or cargo pants on of some sort he had a sweatshirt on i believe he had a backpack that was on his back and then the the rifle was safely strapped over his shoulder and pointed and pointed at the ground i believe um is this an automatic rifle or a semi-automatic rifle this was this was an ar-15 style semi-automatic rifle completely legal did the officer know whether it was automatic or semi-automatic he didn't allege that he he had any basis for suspecting that it was an automatic rifle um he wouldn't know what you know i think he checked it ar-15 if this was an ar-15 i guess it was they know now if they're capable you flip a switch and you make them automatic right or you can put a bump stock on them and make them automatic well what's happened in this case is the in that case it would be absolutely illegal if it if it was an automatic rifle be automatic be illegal wouldn't it no i mean ar-15s are the most commonly owned if it's if it's an automatic it's it's a machine gun correct no your honor i there's i mean there's there's uh there's no basis for the facts in this case to support any any speculation and that's all that this would be that this could have been a machine gun the fact is is that the west virginia legislature authorizes its citizens to possess which includes openly carrying ar-15 style rifles which are perfectly legal under west virginia law so he was there can be no dispute that he was carrying something that day that he was authorized under west virginia law to carry and west virginia law also also through our the officer ascertained that he sent him on his way what was it seven minutes later well i see i see what you're getting at um judge king but here here's the problem with that rifle to examine whether or not it could be a a machine gun you know which can be lawfully owned in west virginia is so long as the possessor has a an nfa stamp that they paid 200 bucks for or whatever so counsel can i ask a can i ask a a scope of your challenge question if you would um had did you before the district court and do you uh on this appeal challenge the scope or duration of the stop as opposed to the stop itself i read your argument to be um challenging the stop itself right the the seizure um and not you know that bringing the sort of distinct challenge of even if the stop itself was appropriate it extended too long or covered topics that were were inappropriate and unlawfully prolonged the stop is that a is that fair not you know i'm i'm asking because i i want to be sure we understand the nature of your claim that that is fair judge richardson and and in fact i i think that this is an is often conflated and i believe it was also conflated by the district court who brought up during the motions hearing at the at the summary judgment hearing that well even if this was an illegal stop it was it was only eight minutes long and it's probably reasonable and here's the problem with that is yeah we're we're contesting this the entire stop the the fact that the stop occurred and we don't need to even look at whether or not it was reasonable or the duration or the scope because under the binding precedent of this court united states versus black from 2013 that stop just by virtue of the fact that it took place is by definition under our case law unreasonable i i i appreciate that i just want to make that quick can you also respond just a minute uh if you would on uh you know even if you you've got a reasonable argument here why why you get over the qualified immunity hurdle um so uh you know except that maybe you got a close case on the on the merits um but doesn't that put us in that that gray area qualified immunity um bars uh going forward here your honor i i would disagree that there is a even a close case for qualified immunity in this case now while it is true that qualified immunity is much more likely to apply or be granted in a fourth amendment search and seizure context this was just so far beyond the pale that that there's no argument there and here's why united states versus black again a 2013 case was is directly on point directly on point to what happened i want you to talk about black but do you do you agree that that's the best case that you've got um for for this qualified immunity analysis that to the extent we find it readily distinguishable from this case that it makes your qualified immunity argument much harder to do again your honor i would i i would argue that qualified immunity just can't be granted in this case you know the the whole again if there's a clearly established law out there if there's clearly established case law of which defendant donahoe or any police officer at this time should have been aware of it's united states versus black and that is i mean it really and it goes to the heart of the fourth amendment and the bill of rights in particular because if the entire black is very black is very different factually from this case mr brian isn't it i mean in black you had the situation where the officer essentially went after the guy grabbed his wrist tried to handcuff him um and that's when he found the metal object under the clothing um you know black wasn't uh it seems to me that you know the only thing the officer had to point to was black became fidgety right began looking left and right uh and the officer concluded he might be trying to flee uh during the time the officer was trying to uh process his identification so it was really a different type of context wasn't it than what we have here you know we don't have any hands on in this case we don't have the officer roughing anybody up the officer was very rude there's no doubt about it and when you look at the uh tape your client was very polite the whole time i mean you have an imbalance in social interaction but in terms of black how can we say that black has to govern when the facts that black were just so different yes your honor i i'm having some trouble understanding my timer here it's now counting in the opposite direction i take that to mean that i'm i'm out of my my original time scheduled for for this portion is it okay if i go ahead and you are you are out out of time but you can you have five minutes of rebuttal reserved and you can take as much as that five minutes as you want uh and use it now okay um well i'll go ahead and answer this question i think this is an important question judge keenan and and this is very much like united states versus black and in fact i would argue we have we have even better facts than than than black now black the whole point of it was is that we can't allow a subjective hunch theory by a police officer because doing that allows just the sort of of evils that the fourth amendment and all of our federal case law for the fourth amendment is meant to prevent for instance high crime neighborhoods and and investigatory detentions of african-americans just because they're armed and that is exactly the sort of the sort of thing that we have in this case if there's a neighborhood speculation so instead of high crime neighborhood like black here we have well um the sort of area that you don't usually see someone you know going hunting or or it's within a mile of a school so that component is very much like black and then you have you have the other fact that like west open carry and that fact is same here and lastly i would argue just briefly that if if you look at the facts in the record when i questioned defendant donahoe he said he didn't know michael walker from adam knew nothing about him didn't know of any allegation that he had committed any crime didn't observe him committing any crime which by the way would also apply to the later allegation that he was too young but this was this was merely the possession of that firearm and he said the the only reason he stopped them to get his id is to see to is to is to be able to run his background check and see if he was a convicted felon and therefore could not possess that firearm but like judge gregory wrote in the black decision being a felon in the possession of a firearm is not the default status where a state permits individuals to open carry firearms the exercise of that right without more cannot justify an investigatory detention permitting such a justification would eviscerate the fourth amendment protections for lawfully armed individuals in those states thank you i'll reserve the rest of my time for rebuttal thank you mr bryan mr strider a good afternoon may it please the court i'm adam strider and i represent officers donahoe and paulie um in the matter now before the court um the district court made three primary holdings all of which we urge should be uphold upheld um first that reasonable suspicion existed for the stop on two bases uh second that the scope and duration of the stop were reasonable and third failing the first two uh that the pre-existing case law environment at the time of the stop uh was not such that a reasonable officer would be on notice um that that a stop under these circumstances would be unlawful now before you get started um i asked your colleague this and since you raised this the second point about the scope and duration sure i didn't read that to be part of the challenge that mr walker was bringing here and i understand the district court said that um but do you is there a reason to think that that's actually before us um no apart from the fact that uh it was part of the district court's ruling um and to the extent to the extent that it's being challenged here if it is um then then we would contend that the district court was correct there um the the first basis part of the totality of circumstances that's that's correct um the the first basis was a reasonable belief that mr walker could have been carrying underage which is a misdemeanor in west virginia and and it's not as mr brian was was trying to frame it it's not solely based on his appearance which perception of of age based on appearance is is subject to reasonable disagreement anyway um but additionally mr walker was uh walking in an area rather than driving in an area where foot traffic is uncommon and younger people are less likely to have a driver's license or own a car and also he was wearing a backpack in close proximity to a school and that's a factor that was uh considered by the first circuit in uh clock versus daily um which was a a case where uh was this a was this a private school uh it is it's a private school and did they wear uniforms i don't know um did this and this defendant was wearing a black sleeveless shirt in the beginning of february right he was wearing a black shirt and camouflage pants um leaveless shirt in west virginia in the beginning of february uh district court though didn't seem to make any uh any particular note of that did it didn't comment on the lack of sleeves no um but carrying a backpack in proximity to a school um is similar to the fact that in clock versus daily uh the first circuit found that it was it was significant that um that the individual who was stopped on suspicion that he possessed alcohol while underage uh was present in a college student heavy neighborhood um in an area with a large concentration of underage people um now we haven't found any case precedent in the fourth circuit which would suggest that an officer cannot demand proof of id uh when they see someone uh engaged in an age-controlled activity uh and and have the facts at issue here um to to form a basis that they might be underage uh but extra jurisdictional persuasive case officer can ask officer can ask anybody for their idk well that's correct um but west virginia they might be able to say no but he he's certainly trying to ask questions well that's correct um but the the case law from extra west virginia is not a stop and identify state but neither was neither is michigan neither is uh massachusetts uh which are the the extra jurisdictional cases which which give us the persuasive precedent that an officer can detain someone to uh to to examine their identification to determine that they're that they're of age um and the uh now now logically there there is no other evidence of being underage than your appearance your environment your conduct um so if if youthful appearance if presence in a uh in an area with a high concentration of underage people doesn't amount to reasonable reasonable suspicion to believe someone's underage well why wouldn't we think that that actually open carrying as opposed to conceal carrying um is suggestive that you're you are of age right i mean the fact that you're sort of like openly carrying a gun you know people don't tend to sort of carry their their you know narcotics um you know so that they're seen they don't tend to carry contraband so that it's seen so why why doesn't that actually sort of cut the opposite direction i i don't think it does because um that that would set a a precedent that if you brazenly break laws that that it suggests that your conduct is legal um and i don't i don't think that's a rule that we want to establish it's just a rule of of common sense right that if you see somebody you know at a laundromat with a large bag of white powder like you don't assume that it's cocaine right i mean i'm not i don't think it's a rule i'm just saying it's a matter of common sense when we see people carrying guns openly we tend to think that they're people that are perfectly capable and allowed to do so not no i i don't think that necessarily true um someone who is uh just because they're obviously breaking the law doesn't it doesn't cut against the the the idea that they might be breaking the law um now the the second basis for um for reasonable suspicion was a suspicion of a threat to the community um and this was this was based on um the fact that mr walker uh was traveling on foot towards a school in a suburban residential neighborhood now mr uh brian has made a a big deal about the fact that open carry is legal in west virginia and it is um ar-15s are legal to to possess and and facially legal to carry but reasonable suspicion doesn't require the obvious commission of a crime in the officer's presence that's probable cause um it's the the if the totality of the circumstances suggest that there might uh there's a reasonable possibility of an imminent crime and and prevention of imminent crimes um as the supreme court stated in the united states versus socolow is a a reasonable basis to um for for suspicion for investigatory stop and uh the uh open carry laws don't create an affirmative right they're just the absence of a prohibition the uh west virginia doesn't have a statute saying that open carry is legal and and there's nothing suspicious about carrying a gun anywhere um it's just like any other non-prohibited object um and and that by by way of analogy the the sixth circuit in uh in a procurator opinion in the united states versus ivy uh found reasonable suspicion where a man was loitering outside of a gas station holding a golf club i to my knowledge every state is an open carry golf club state uh there's nothing unlawful about holding a golf club outside of a gas station but it's it's a sufficiently novel appearance of that object and it's an object that can be used as a weapon um and in that context it's more uh it eliminates a lot of of potential innocent conduct to to the point that we're left with what's probable is that either something unlawful is going on or something weird is going on um and that's what gives rise to reasonable suspicion now um the the totality of the facts here are that mr walker is is dressed in a manner which is evocative of of kind of a militia motif um he's carrying an uncased ar-15 and across his back walking down the side of a road in a suburban residential neighborhood toward a school and we we don't have on the record the the exact distance that he was from the school but it was between a mile half mile uh eight to ten minute walk i thought mr bryan said a mile didn't he you don't he said a mile estimates have varied a mile a half mile a quarter mile um it was walking it was the tase valley christian school was the name of and this was a and this was less than a week from the parkland shooting in florida it is and and the reason that that's significant is that the parkland judge chambers judge chambers recited all that uh in his opinion that's correct and and the the reason that that's significant is that the the parkland shooting so saturated national media coverage the the way that it was carried out the details of it that not only does this put in the heads of of would-be does this demonstrate to would-be shooters that this kind of activity generates this kind of national notoriety but it also essentially gives a how-to manual um it shows what kind of a gun kills this many people in this short of a time period um and uh we did the shooter in um did parkland have an ar-15 he did your honor as did the shooter in sandy hook um as did the shooter in pulse nightclub as did the shooter in las vegas it is the hallmark gun of of uh of mass shootings um which is why it was developed as a it was developed as a military weapon by the u.s army for the infantry was it not i i don't know if that's true or not but it is um evocative it was it functions in essentially the same way as a military rifle if judge seems to guess something about history you should just agree with it noted your honor um the uh but the the fact that it's it's lawful is not a prohibition on it amount on it contributing to reasonable suspicion um different guns have different uses and they draw different implications in different contexts um if you are to to take the uh uh the the situation in the united states versus black and it's part of one of the reasons why it's so distinguishable from this case is that uh the the individual who was open carrying in black was carrying a handgun in a holster on its hip now the inference there um is is derived from the fact that carrying a handgun in a holster on your hip is a common practice among people who carry firearms uh as a matter of course for self-defense um an ar-15 is a big unwieldy weapon it's not a a traditional um carry weapon for self-defense um it's also not traditionally used for hunting and furthermore this is february which is not a major hunting season mr walker wasn't wearing blaze orange um and this area would be unsuitable for hunting anyway so you have um the the this elimination or improbability of a large portion of potential innocent conduct and you're left with this is either something concerning unlawful or it's something unusual and being unusual is not illegal but when something is either unusual or it's unlawful that's where uh investigatory stops are warranted um to to touch a little more on on black um first the one of the big reasons black judge chambers knew all about black too did he you all talked about that to him over there he uh chambers ran down the uh the the facts of black and and why this is differentiable um and and a big reason is that um united states versus black was not a 1983 case it was a the appeal of a motion to suppress so qualified immunity wasn't an issue in that case um and the second is that mr black the defendant in united states versus black was not openly carrying um mr black was uh in the group the officers knew to have a history of arrests so the the top line ruling in black was that there's no reasonable suspicion by association um and uh and and the other holding of black is that reasonable suspicion uh doesn't arise from the presence of a firearm standing alone without more and and the district court acknowledged that and acknowledged that that's the rule but found that here there is more um in this case is all about the more and that's the whole thing um in in black the the conduct that was observed was that this gentleman was was sitting in a car at a gas pump for an indeterminate amount of time and then drove to an apartment building and approached a group of people um the officers claimed that that was indicative of a drug transaction and the the the this court found that that was an unwarranted uh inference to draw so the the fact of the gun was standing alone here the fact that the gun is not standing alone um you have the the concern um which i i don't know i don't know that there needs to be a detailed explanation of why it's concerning that someone appears to be or at least why it's concerning to anyone who has paid attention to the news over the past decade why it would be concerning that approaching a school with an ar-15 rifle um but even if this court comes to the conclusion here that the more isn't here that that rhetorically begs the question of what is the more and that doesn't seem to have been um at least in our review of the case law uh established in this circuit in a binding way now the so the the best guidance available to the officers for what constitutes more comes from outside the circuit from the district court cases in michigan in pennsylvania um and the uh sixth circuit case out of tennessee that we cited in our brief where those courts held that reasonable suspicion existed in in cases like this uh that came to the general conclusion that where a display of firearms is novel and alarming in context that reasonable suspicion for an investigatory stop arises even in an open carry state um tennessee michigan and pennsylvania are all open carry states now it might be the case the court might say at the end of this case that heading towards a high school uh half quarter mile away 10 walking distance isn't close enough to be alarming or this conduct isn't doesn't amount to enough to be alarming but that rhetorically begs the question of what does um in machiavelli versus sumner this uh this court said that qualified immunity to overcome qualified immunity a right can't simply be established in the abstract it has to be established in its particularized application and also that uh officers are liable for crossing bright lines not for bad guesses in gray areas now here there does not appear to have been drawn a bright line for the officers to cross because we don't know what uh or in a binding manner haven't been informed by this court at least before now what in addition to the presence of the firearm has to be there before reasonable suspicion exists to stop someone openly carrying and that's the legal environment in which qualified immunity you don't want this case decided on qualified immunity though do you want to decide it on the fact there's no constitutional violation no our certainly our primary argument is that reasonable suspicion existed for the stop based both on um a reasonable belief that mr walker could have been under age and based on a reasonable belief that that uh he could have posed a threat to um uh to to the community generally and the school in particular um but failing that in the alternative we'd argue that alternative holding uh that that even if a constitutional violation had occurred uh the qualified immunity would would uh would still bar the suit now to to go back to the question of or and and the the point that ar-15s are lawful um to to own lawful objects in different contexts you can draw different inferences from from lawful objects in different contexts um if if you walk into a ski lodge wearing a ski mask nobody's gonna bat an eye if you walk into a bank wearing a ski mask the it's pretty hard to argue there's not reasonable suspicion there or to go with judge richardson's analogy earlier someone with a large bag of white powder at the laundromat probably doesn't have cocaine um someone who has a large bag of white powder uh in uh in their car during a traffic stop well we're a little less certain um so the uh unless the court has more questions um we believe that the the holdings of the district court should stand um the reasonable suspicion existed for the stop uh the scope and duration of the stop are reasonable and they were minimally invasive and they were balanced against uh what is properly a grave concern um for uh for for the uh safety of the community um and the failing that qualified immunity should apply thank you mr strider we appreciate it mr bryan you have you've saved a couple minutes mr bryan i'd like to ask you kind of a kickoff question i think the the real important takeaway here from mr strider's presentation is that lawfulness does not mean that it can't be lawful behavior can contribute to reasonable suspicion combined with other factors so why don't we have those other factors in this case just focusing on the lawfulness of possessing the gun mr strider saying isn't enough could you address that yes that's a good question your honor and it it's it's a fascinating topic there there is there is some conflicting case even from the supreme court in this i think the important distinction is is that yes it's possible for otherwise legal observances to together with looking at the totality of the circumstances to form reasonable suspicion however there still has to be some some reasonable suspicion that there's an underlying crime somewhere and that's the difference in this case is this is literally falls within the holding of black because there is no more all there is is possession of that firearm and and it's there was nothing about a school that that that can be seen or heard on that video that had nothing to do with it it came out after the fact once lawyers were involved on the defense side now you you agree counsel you you agree it's an objective inquiry under ran we're not looking at a subjective inquiry so the fact that that the officer doesn't mention that on the videotape is is neither here nor there isn't it yes your honor the reasonable suspicion analysis itself is an objective one as per the ashcroft case from the supreme court 2011 now the argument that this defendant donahoe had some alleged heightened concern over a potential mass shooting copycat incident due just due to proximity of the parkland shoot that fails to comply with that standard because it's entirely subjective rather than objective and that makes our case it's irrelevant to an objective analysis these subjective hunch type theories have been repeatedly shot down including by this court in fact they were if if the court were to rule in favor of the police here on this issue this would this would i mean this would completely go against the central tenant of united united states versus black and in fact the district court acknowledged that i mean the district court said that the district district court acknowledged that yes there has to be more you know just possession of a firearm in a state that allows its its citizens to possess firearms cannot by itself without more form reasonable suspicion to to perform an investigatory detention now the the court wanted a a more more more analysis on what more is and it expressly wants to include ar-15s in that and that's a complete red herring in this case this had nothing to do in the underlying case about attacking ar-15s or declaring them to be you know anyone in possession of an ar-15 to be a potential school shooter i mean that's just what's outrageous about what happened here it's because it had nothing to do with it and in fact i would i would request i'm sorry go ahead your honor you know mr ryan i haven't heard you say anything during your whole presentation about the fact that this all started with a 911 call from a concerned citizen can't that be uh something that the officer is acting in response to uh and and be a legitimate consideration uh along with you know his community policing responsibilities here a citizen has made a 911 call based on this guy walking around with a semi-automatic rifle on a public highway yes your honor that that's that's a good question um the the underlying facts of this case if you if you look at what i've put in our brief an excerpt from the deposition transcripts of me questioning defendant donahoe he he admits i mean he admits that that there is no uh that he doesn't know who the 911 caller was or what the actual complaint was he admits that he had no information that michael walker had committed any crime the only information he had which wasn't information was his speculation that well he he could be he could be a felon and therefore a prohibited person under state and federal law and you're saying the 911 call really has nothing to do with our analysis here no it there there's there's nothing in the record to substantiate a finding a reasonable to support reasonable suspicion from the 911 call it theoretically could if the facts were different but he said he didn't even know what the 911 caller said and that's common in open carry calls is this is just somebody that is scared of guns or doesn't know that open carry is legal in west virginia and they just call 911 and so he had no information at the time that he stopped him it was the fact that they're the fact it's legal in west virginia doesn't mean people aren't going to be scared when they see somebody walking around looking dangerous to them yes your honor but that that's irrelevant to the reasonable suspicion standard i sure used by police officers every day yes that's right oh yeah i've given you i've been very liberal you've got the you've got more than five minutes that you've reserved and gave you some extra time to give you another 30 seconds to wrap it all up yes your honor and i'm i'm i'm glad that you you brought up you know the 911 caller and potential tips to police because we have a on third party tips to police so here even though we have no information on what the tip was whether whether it was a tip and who the caller was we don't even have information and we can look at illinois versus gates from 1983 or florida versus jl from 2000 or navarette versus california from 2014 if you look at these cases you have to look at the totality of the circumstances to see even if a third party tip is reliable enough for a police officer to to stop somebody in fact florida versus jl 2000 the supreme court held that an officer may not stop and frisk someone based solely on an anonymous tip that described even describing the person's location and appearance but contain no details about any illegal conduct in which that person was participating or had participated so i'll i'll think i'll leave you with this your honors i appreciate the and as judge gregory noted in his opinion from united states versus black he said in the words of dr martin luther king jr we're reminded that quote we are tied together in a single garment of destiny caught in an inescapable network of mutuality that our individual freedom is inextricably bound to the freedom of others thus we must ensure that the fourth amendment rights of all individuals are protected so even if somebody has an irrational fear of firearms whether it's a 911 caller or whether it's this police officer we can't allow those individuals to eviscerate the rights of the rest of us thank you thank you mr bryan good to have both of you with us if we were in richmond we'd come down and shake hands with you and tell you personally we good to have you there and you did a good job but maybe next year we'll be there thanks so much look forward to it your honor thank you your honor madam clerk will adjourn court for the day and the and the judges will go into conference this honorable court stands adjourned until tomorrow morning god save the united states and this honorable court
judges: Robert B. King, Barbara Milano Keenan, Julius N. Richardson